# UNITED STATES DISTRICT COURT
# DISTRICT OF MARYLAND

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>JOSEPH LOWELL BRATTEN,<br><br>Defendant. | Criminal Action No. TDC-17-0363 |

## MEMORANDUM OPINION

Defendant Joseph Lowell Bratten is charged with Attempt to Interfere with Interstate Commerce by Robbery, in violation of 18 U.S.C. § 1951(a) (Count One); Interference with Interstate Commerce by Robbery, also in violation of 18 U.S.C. § 1951(a) (Count Two); and Using, Carrying, and Brandishing a Firearm During and in Relation to a Crime of Violence, in violation of 18 U.S.C. § 924(c)(1)(A)(ii) (Count Three). After four days of trial beginning on February 20, 2018, and three days of deliberations, a jury was unable to reach a verdict, and the Court declared a mistrial on March 1, 2018. On April 9, 2018, Bratten filed a Motion for Judgment of Acquittal, the briefing on which was completed on May 14, 2018. Having reviewed the submitted materials, the Court finds that no hearing is necessary. *See* D. Md. Local R. 105.6. For the reasons set forth below, the Motion is GRANTED.

## BACKGROUND

On January 18, 2017 at approximately 7:00 p.m., a masked man carrying a gun entered the Shell Gas Station/Dash-In ("Shell") located at 9220 S.E. Crain Highway in Upper Marlboro, Maryland, jumped over the counter, demanded money from the cashier, and, when the cashier confronted him, struck the cashier on the head and fled without taking any funds from the store. Later that evening, at approximately 8:00 p.m., a masked man carrying a gun entered the Circle

K convenience store ("Circle K") located at 3511 Crain Highway, Upper Marlboro, Maryland, jumped over the counter, demanded money from the cashier, and fled carrying a cash register drawer. Upon arrival at the Circle K, the Prince George's County Police Department ("PGCPD") recovered an unopened pack of Newport cigarettes from the part of the parking lot through which the robber had fled and lifted a latent fingerprint from the pack. A PGCPD fingerprint examiner conducted an analysis of the print and concluded that it matched a known fingerprint of Bratten's right thumb.

At trial, the Government called 11 witnesses who testified to various aspects of the case. Beshar Jumale, the store clerk working at the Shell on the night of the robbery, and Suraj Bishwokarma, the Circle K store clerk, explained in detail how each robbery was conducted, but neither witness identified Bratten as the robber. Through these witnesses, the jury was shown security camera footage of each robbery. The videos showed that the robbers wore different outer sweatshirts or jackets, but the Government pointed out various similarities between the robbers and their actions, including that each wore underwear of the same color and similar sneakers with red trim; each carried in his left hand a distinctive black firearm with a skinny barrel; and each made similar movements, including stepping onto the counter with his left foot in order to get behind the counter and trying to cover his hands with the sleeves of his jacket before handling the cash register. Although several other witnesses described the robbers' appearance, they provided conflicting statements as to height and build, and no witness identified Bratten as the robber of one or both stores or testified to any similar features or physical characteristics. The Government presented no evidence of Bratten's height or weight, whether he was right-handed or left-handed, or whether he owned or had worn any items of clothing

2

similar to those worn by the robber. The Government offered no evidence of any kind about Bratten, such as his residence, employment, or past presence at either store.

As for the cigarette pack, surveillance video of the Circle K robbery shows that while he was behind the counter, the robber turned briefly to a display case of Newport cigarettes and disturbed them in way that caused several packs to fall to the ground, and that the robber had what appear to be packs of cigarettes in his pocket, but it does not conclusively show the robber putting cigarettes from the display case into his pocket. Ray Albert Michael, Jr., a customer who was pumping gas at the Circle K at the time of the robbery, testified that he saw the robber exit the Circle K with a pistol in his right hand and the cash register drawer in his left hand, turn left and walk toward the parking lot, throw away the register drawer, and continue through the parking lot to an awaiting vehicle. When he went into the parking lot, about 300 feet away from the front of the store, Michael saw a pack of Newport cigarettes on the ground, which he had not seen when he drove through that area on the way into the Circle K. He did not see anyone touch the cigarette pack until the police arrived about three to four minutes later.

Alfred Teran, a truck driver who was at the Circle K that evening, testified that after adding gas at the diesel truck fuel pumps to the side of the Circle K, he walked toward the store and was passed by the robber who was leaving the store and heading though the parking lot in the direction of the truck fuel pumps. While he was inside the store, he learned that it had just been robbed, and the entrance to the store was locked temporarily. Once he departed, he went back to the truck fuel pumps to check on his truck and saw the pack of Newport cigarettes on the ground near the fuel pumps. He had not seen it there when he first drove into the parking lot. He then went back to the front of the store to answer questions from the police. Neither Teran

nor Michael testified that he saw the cigarette pack actually fall out of the robber's pocket as he fled the Circle K.

Corporal Patrick Whittington, a member of the PGCPD Crime Scene Investigation Division, testified that he responded to the Circle K robbery, photographed the cigarette pack where it lay in the parking lot, and observed that it had an intact cellophane wrapper and a tax stamp on the bottom of the pack. Corporal Whittington also described how he recovered a latent fingerprint from the cigarette pack and submitted it for analysis. Kathleen Holshue-McNamara, a fingerprint examiner with the PGCPD who was qualified as an expert at trial, testified to the process that she used to analyze the fingerprint and provided her opinion that the latent fingerprint recovered from the cigarette pack matched the right thumb print on a fingerprint card containing the known fingerprints of Bratten.

## DISCUSSION

Bratten seeks judgment of acquittal pursuant to Federal Rule of Criminal Procedure 29(c) on all three Counts of the Indictment on the grounds that there was insufficient evidence for the jury to find guilt beyond a reasonable doubt. Bratten argues that the Government's case against him consisted of only the fingerprint on the cigarette pack, and that such evidence was insufficient to support a conviction on any of the three counts because (1) the Government did not prove that the cigarette pack was connected to the Circle K robbery; (2) the Government did not offer sufficient evidence to establish that the fingerprint could have been impressed only during the crime; (3) the expert opinion that the fingerprint was made by Bratten was unreliable because there was no evidence presented of verification by a second examiner; and (4) the Government presented no corroborating evidence of Bratten's connection to either robbery. Bratten further argues that the Court should enter judgment of acquittal on Count One because

there was insufficient evidence to prove that the Shell robbery and Circle K robbery were carried out by the same individual, and on Count Three because the Government did not establish that the item brandished by the robber in the Circle K robbery was an actual firearm rather than a replica, as required for a conviction under 18 U.S.C. § 924(c). Because, as discussed below, no conviction on any count can be sustained without concluding that the fingerprint evidence was itself sufficient to prove that Bratten committed the Circle K robbery, the Court will consider Bratten's fingerprint arguments first.

### I. Legal Standard

In reviewing a Motion for Judgment of Acquittal under Rule 29, the Court determines whether, viewing the evidence in the light most favorable to the prosecution, there was substantial evidence to support the jury's verdict. *United States v. Osborne*, 514 F.3d 377, 385 (4th Cir. 2008). Substantial evidence is "evidence that a reasonable finder of fact could accept as adequate and sufficient to support a conclusion of a defendant's guilt beyond a reasonable doubt." *Id.* To sustain the verdict, the Court must conclude that "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Madrigal-Valadez*, 561 F.3d 370, 374 (4th Cir. 2009) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). In doing so, the Court must consider both circumstantial and direct evidence. *United States v. Tresvant*, 677 F.2d 1018, 1021 (4th Cir. 1982). The Court does not weigh the credibility of witnesses, but instead must assume that the jury has resolved all contradictions in the Government's favor, *United States v. United Med. & Surgical Supply Corp.*, 989 F.2d 1390, 1402 (4th Cir. 1993), and give the Government "the benefit of all reasonable inferences from the facts proven to those sought to be established," *Tresvant*, 677 F.2d at 1021.

## II. Fingerprint Evidence

It is undisputed that the presence of Bratten's fingerprint on the Newport cigarette pack was the only evidence presented by the Government to connect Bratten to robberies. No witness identified Bratten as the perpetrator of either robbery, and the varying descriptions of the robber, with heights ranging from 5' to 5' 9", were wholly inadequate to connect Bratten to the crime. The Government did not argue that the robbers depicted in the surveillance videos could be identified as Bratten. No evidence was presented that Bratten had ever been seen wearing any articles of clothing similar to those worn by the robber, or in possession of Newport cigarettes. The Government offered no evidence about Bratten's background, such as whether he had ever visited either convenience store, whether he lived or worked in the area, or whether he resided in Maryland. The Government did not even establish whether Bratten was right-handed or left-handed.

When the Government's case rests on a lone fingerprint, courts have carefully considered motions for judgment of acquittal. In *United States v. Strayhorn*, 743 F.3d 917 (4th Cir. 2014), the United States Court of Appeals for the Fourth Circuit held that "a fingerprint on an easily movable object with no evidence of when it was imprinted is sufficient to support a conviction only when it is accompanied by additional incriminating evidence." *Id.* at 924. In *Strayhorn*, two defendants allegedly robbed a store at gunpoint and bound the store's owner with duct tape. *Id.* at 920. The Government's main evidence against Strayhorn was a partial fingerprint on the duct tape used to bind the victim's feet that matched Strayhorn's fingerprint. *Id.* at 921-22. However, the Government's fingerprint examiner expert witness "conceded that he had no way to determine when [the defendant's] fingerprint was imprinted . . . and that the fingerprint could have been impressed even a year earlier." *Id.* at 923. The Fourth Circuit concluded that even

6

with additional evidence in the case, including that a gun stolen during the robbery was found in a car driven by the defendant, and that one of the robbers was the defendant's brother and was therefore someone with whom he was associated, judgment of acquittal was warranted. *Id.* at 923-24.

In *United States v. Corso*, 439 F.2d 956 (4th Cir. 1971), the Fourth Circuit held that "[t]he probative value of an accused fingerprints upon a readily movable object is highly questionable, unless it can be shown that such prints could have been impressed *only* during the commission of the crime." *Id.* at 957. In *Corso*, the fingerprint of a defendant charged with larceny of a credit union was found on a matchbook cover used to jam a lock at the financial institution. *Id.* As in *Strayhorn*, the Government's expert "testified that it was impossible to determine how long defendant's fingerprints had been on the matchbook cover and admitted they could have been placed there months before the burglary." *Id.* The court overturned the defendant's conviction, noting that the only other evidence relating to the defendant, that he worked near the credit union, was not enough to support a conviction. *Id.* at 958.

Thus, in order for a reasonable jury to find a defendant guilty when the only evidence linking the defendant to the crime is a fingerprint on a highly movable item, the Government must establish that (1) the object on which the fingerprint was found was connected to the crime; and (2) the object was inaccessible to the defendant prior to the crime, such that fingerprint "could *only* have been impressed during the commission of the crime." *See Corso*, 439 F.2d at 957; *United States v. Van Fossen*, 460 F.2d 38, 41 (4th Cir. 1972). A lone fingerprint will be sufficient only where the Government has introduced evidence establishing these points. For example, in *Van Fossen*, the Fourth Circuit overturned a counterfeiting conviction where the defendant's fingerprints were found on an engraving plate used for counterfeiting and related

photographic negatives stored in an unlocked safe at a printing shop, but there was no evidence presented on when the crime was committed, when the defendant's fingerprints were placed on the items, and whether the objects "were previously unavailable" to the defendant. 460 F.2d at 41. By contrast, in *United States v. Bryant*, 454 F.2d 248 (4th Cir. 1972), the Fourth Circuit upheld a conviction where the defendant's fingerprint was found on a metal island next to a lock box in a delivery truck, and the metal island was accessible only when a heavy metal cover was raised. *Id.* at 249. The Government established that the defendant's fingerprints were not present on the metal island when the delivery truck was examined following an earlier robbery two months before. *Id.* at 251. Where the Government had established the metal island next to the lock box was connected to the robbery, and that it was inaccessible to the defendant during the limited, two-month period during which the fingerprint could have been imprinted, the evidence was sufficient to establish that the defendant could have imprinted his fingerprints only during the commission of the crime. *Id.*

### A.     Connection to the Crime

Unlike in *Strayhorn*, in which it was evident that the duct tape on which the defendant's fingerprint was found was connected to the robbery because it was used to bind the victim's feet, 743 F.3d at 921, or in *Corso*, where the matchbox cover containing the defendant's fingerprint had plainly been used by the robber to jam the lock at the credit union, 439 F.2d at 956-57, the parties have fiercely contested whether the evidence is sufficient to show that the Newport cigarette pack found in the parking lot was connected to the robbery. Bratten argues that where no witness testified to seeing the robber drop the Newport cigarette pack in the parking lot, the presence of such a common item in a darkened parking lot approximately 300 feet from the Circle K does not establish beyond a reasonable doubt that the pack was stolen during the

robbery. Bolstering Bratten's argument is the fact that although the surveillance video shows that the robber knocked Newport cigarette packs off the display case, it does not definitively show that he placed any cigarette packs in his pocket. It also does not show whether the robber used his right hand to touch any cigarette packs, as it is unclear whether he was still holding the gun in his left hand when he disturbed the cigarette display case. While the video does show what appear to be cigarette packs in his sweatshirt pocket, it does not exclude the possibility that he was already carrying one or more of them when he entered the store. The evidence also did not definitively exclude the possibility that the Newport cigarette pack was dropped in the parking lot by someone else before the robbery, or in the few minutes after the robbery before Michael arrived in the area and spotted it. Notably, because the surveillance video shows the door to the Circle K being locked after Teran entered it immediately following the robbery, some period of time must have elapsed before he was able to leave and observe the cigarette pack in the parking lot.

However, on a motion for judgment of acquittal, the Court must consider the evidence in the light most favorable to the Government, and it may rely upon circumstantial evidence. *Tresvant*, 677 F.2d at 1021. Although the surveillance video does not show the robber putting the cigarette packs into his pocket, it does show the robber standing directly in front of the Newport display case and several boxes of Newport cigarettes falling to the ground around him. The video shows that as the robber turns back toward the register, the pocket of his hoodie contained several white, shiny items, consistent with cigarette packs wrapped in cellophane. A rational jury could conclude that the robber had taken one or more packs of Newport cigarettes from the display case and put them in his pocket. Although neither Michael nor Teran testified that he saw the robber drop the cigarette pack, they both testified that they did not see the

cigarette pack on the ground when they drove through the area prior to the robbery, but then saw it there after the robbery. Michael testified that once he saw it, no one touched it before the PGCPD arrived, within three to four minutes. Corporal Whittington testified that when he arrived, the area had been secured by other officers. Finally, the unopened condition of the cigarette pack, confirmed by photographs and Whittington's trial testimony, is consistent with the pack having been taken from the display behind the Circle K counter. Thus, the Government has offered a set of reasonable inferences that, taken together, could support the conclusion that the cigarette pack was taken by the robber from behind the Circle K counter and dropped as he fled the scene.

### B. Imprinting During the Crime

Regardless of whether the inferences offered by the Government support a finding beyond a reasonable doubt that the cigarette pack was connected to the robbery, it does not necessarily follow that Bratten's fingerprint was actually imprinted during the robbery. In *Strayhorn*, for example, there was no dispute that the duct tape had been handled by a robber during the commission of the crime, but it did not necessarily follow that the particular print recovered had been impressed by the defendant in the course of the offense. *See Strayhorn*, 743 F.3d at 923; *see also Corso*, 439 F.2d at 957 (finding that although a matchbook cover was undisputedly used during the crime, the evidence was insufficient to establish that the defendant's fingerprint found on the cover was impressed during the crime). Under *Corso*, the Government must also establish that the fingerprint "could *only* have been impressed during the commission of the crime," not prior to the robbery or after it was dropped by the robber. *Corso*, 439 F.2d at 957.

Courts have repeatedly made clear that the Government, as part of its burden of proof, is required to present sufficient evidence to establish that the item on which the fingerprint was found was inaccessible to the defendant prior to the crime, even under circumstances that pointed to the defendant's guilt. *See Strayhorn*, 743 F.3d at 923-24. For example, in *United States v. Lonsdale*, 577 F.2d 923, 927 (5th Cir. 1978), the court found that the presence of the defendant's fingerprint on a check issued to a Navy employee was insufficient to establish that the defendant was guilty of uttering the check, even though the defendant worked on the same Navy base and the check had been cashed using his name and social security number, because there had been no evidence presented that the defendant could not have touched the check for other reasons during the seven days between its issuance to the victim and its fraudulent negotiation. *Id.* at 926-27; *see also Hiet v. United States*, 365 F.2d 504, 505 (D.C. Cir. 1966) (finding that the presence of the defendant's fingerprint on the inside of the window of a car that had been broken into was insufficient to sustain a conviction when the Government failed to eliminate the possibility that the defendant had touched the window while passing by in the days before the crime).

Courts have found evidence of inaccessibility insufficient even where access to the object appears to have been significantly restricted. In *Van Fossen*, the items containing the defendant's fingerprints were kept in an unlocked safe inside a print shop, but no evidence was offered to establish that the items were "previously unavailable" to individuals with legitimate business in the store. *Van Fossen*, 460 F.2d at 41. In *Borum v. United States*, 380 F.2d 595 (D.C. Cir. 1967), the court granted a motion for judgment of acquittal in a burglary case where the defendant's fingerprints were found on glass jars which had contained coins stolen by the burglar. *Id.* at 596. Even though the jars were in a private home to which the defendant did not have access, the court concluded that the evidence did not support a guilty verdict because the

11

Government's fingerprint expert had testified that the fingerprints could have been on the jars "indefinitely" or for a period of "years," and the Government had not presented evidence to establish that the glass jars had been inside the house or otherwise inaccessible to the defendant during that entire time period. *Id.*

Likewise, in *Mikes v. Borg*, 947 F.2d 353 (9th Cir. 1991), the court overturned a conviction where the defendant's fingerprints were found on the murder weapon, consisting of a post that had been stored in the victim's basement for four months prior to the crime, because the Government did not establish that they were "previously inaccessible" to the defendant, such as at the hardware store before they were purchased by the victim. *Id.* at 358-60. The court rejected the notion that the defendant needed to explain how his fingerprints came to be on the post; rather, it held that the Government failed to meet its burden to prove that the post had been inaccessible to the defendant. *Id.* at 359.

The type of evidence required to establish inaccessibility is illustrated by *Stevenson v. United States*, 380 F.2d 590 (D.C. Cir. 1967), in which that court held that a jury could reasonably find that the defendant's fingerprint on a tea canister in a burglarized house was imprinted during the crime because there was testimony that the canister had been in the house for three years, the print was made within the last two years, and the defendant had never been given access to the house. *Id.* at 592-93; *id.* at 594-95 (Bazelon, C.J., concurring). As discussed above, in *Bryant*, the court relied on the fact that there was confirmation that the fingerprint was at most two months old, and the metal island on which it was found inside the delivery truck was a stationary object not accessible to the defendant during that time period. 454 F.2d at 251. Thus, while the Government "need not negate all inferences consistent with innocence which could arise from the fingerprints," *Borum*, 380 F.2d. at 597, it must present evidence to establish

that the movable object in question was inaccessible to the defendant prior to the commission of the crime at any time when the fingerprint could have been left.

Here, the Government failed to offer such evidence. As in *Strayhorn* and *Corso*, the Government's fingerprint expert, Kathleen Holshue-McNamara, conceded that she "cannot tell the age of a print" and "wouldn't know when the print was made." Holshue-McNamara Trial Tr. 49-50, Opp'n Mot. Acquit, Ex. I, ECF No. 159-9. The Government summarily asserts that "Defendant would not have been able to access tobacco products at the Circle K except by purchasing or stealing them." Opp'n Mot. Acquit at 17 n.10, ECF No. 159. In support of this conclusion, it offered testimony from Bishwokarma that at the Circle K, tobacco products are made available only behind the counter, and testimony by the Circle K manager that Bratten was never an employee at that store. Although this testimony arguably excluded certain ways in which Bratten could have touched the cigarette pack other than during the robbery—in the course of work at the Circle K or as a customer browsing the aisles in the store—it failed to exclude others. The Government did not elicit any testimony regarding how accessible the area behind the counter, which is not enclosed and was quickly accessed by the robber, was to non-employees. Nor did it provide evidence to exclude the possibility that Bratten had purchased and returned the pack, or had been given the pack and handled it before deciding not to purchase it. The Government offered no evidence on how long the particular cigarette packs behind the counter on the day of the robbery had been on display there, or how long they had been on the premises before they were put on display.

Other than brief testimony that the Circle K ordered cigarettes from a company in Pennsylvania and usually received them the next day, the Government offered no evidence to address whether Bratten worked in any role in the supply chain, from manufacturing to delivery.

13

The Government offered no evidence on whether cigarette packs were ever left unattended on a loading dock, or whether and how they were secured while on the premises at the Circle K before being put out on display. Particularly where the Government did not establish a time period during which the fingerprint was imprinted, the limited evidence that Newport cigarettes were sold from behind the counter was not enough to establish that the cigarette pack was inaccessible to Bratten at times other than the commission of the crime. *See Borum*, 380 F.2d at 597, *Mikes*, 947 F.2d at 361.

Although the Government contends that allowing for other scenarios under which the fingerprint may have been imprinted constitutes impermissible speculation, courts have made it abundantly clear that a criminal defendant has no burden to provide an explanation for when he left a fingerprint on an object and that, instead, it is the Government's claim that it must have been left during the crime that is speculative, in the absence of evidence that the object was previously inaccessible to the defendant. *See, e.g., Lonsdale*, 577 F.2d at 927 (stating that the defendant "was under no obligation to explain the existence of the prints" and concluding that if the jury thought the defendant "never would have had the opportunity to touch the check if he had not been the one who cashed it . . . that conclusion would have been based on speculation alone"); *Borum*, 380 F.2d at 597 (stating that while the jury may have thought the defendant "never had any opportunity to touch the jars outside the house . . . that conclusion would have been based on speculation alone").

To the extent that courts have found fingerprint evidence alone to be sufficient to support a conviction, they have sometimes done so where there were two different fingerprints on different movable objects that came from different sources. *See United States v. Bush*, 749 F.2d 1227, 1229 (7th Cir. 1984) (holding that fingerprints found on two different objects located in a

bank vault that had come to the bank through "different channels" were sufficient to sustain the conviction); *United States v. Scott*, 452 F.2d 660, 661-62 (9th Cir. 1972) (holding that separate fingerprints found on batteries in a flashlight left at the scene of the burglary and on checks stolen as part of the crime were sufficient to sustain the conviction); *see also Stevenson*, 380 F.2d at 591 (finding sufficient evidence based in part on multiple fingerprints on three different objects). They have also found sufficient evidence when the fingerprint was on a stationary object in a restricted area, rather than a movable object "easily and routinely passed from person to person." *Bryant*, 454 F.2d at 250; *see also Stevenson*, 380 F.2d at 591 (finding sufficient evidence based in part on the defendant's fingerprint on a piece of furniture in a private home that had been burglarized). Those situations are not present here, and the Government has notably offered no example of a case where a single fingerprint on a highly movable object has been sufficient to sustain a conviction.

The Court's conclusion is bolstered by the Government's utter failure to offer additional evidence linking Bratten to the crime. Notably, in numerous cases in which the court granted or upheld motions for judgment of acquittal based on the insufficiency of fingerprint evidence, the Government had nevertheless offered some other evidence relating to the defendant. *See Strayhorn*, 743 F.3d at 923 (noting that the defendant was found driving a car containing a firearm stolen during the alleged crime); *Borum*, 380 F.2d at 597 (noting that the Government presented evidence that the defendant was within one-and-a-half miles of the scene of the robbery); *Lonsdale*, 57 F.2d at 927 (noting that the defendant's name and social security number were used to endorse the uttered check). Here, the Government introduced no evidence of any kind relating to Bratten other than his fingerprint. The only possible corroborating evidence was the surveillance video, but the Government appropriately did not attempt to argue that Bratten

resembled the robber, because such a comparison would have amounted to little more than the fact that both are African American males of average height and build. Although it referenced the fact that the robber carried the gun in his left hand, the video was inconclusive on whether the robber touched any cigarette packs with his right hand, and the Government presented no evidence on whether Bratten is right-handed or left-handed. To conclude that the evidence was sufficient would run contrary to the Fourth Circuit's holding in *Strayhorn* that "a fingerprint on an easily movable object with no evidence of when it was imprinted is sufficient to support a conviction only when it is accompanied by additional incriminating evidence." 743 F.3d at 924.

Finally, the Court's conclusion that the evidence was insufficient to support a guilty verdict is solidified by the fact that, as discussed above, the Government's circumstantial evidence linking the cigarette pack to the robbery is far less compelling than the definitive connection of the object to the crime in *Strayhorn* or *Corso*. Although the evidence supported the inference that the cigarette pack had been taken by the robber and dropped during his escape, it did not completely foreclose other possibilities, such as that the pack was dropped by someone else before or immediately after the robbery, or that the robber had received it from another source before the robbery. Particularly when considered in combination with the imperfect evidence connecting the cigarette pack to the robbery, the lack of evidence that the cigarette pack was inaccessible to Bratten necessitates the conclusion that the Government failed to offer sufficient evidence to prove beyond a reasonable doubt that Bratten committed the Circle K robbery. Thus, judgment of acquittal must be entered on Counts Two and Three.

Without sufficient evidence to prove that Bratten committed the Circle K robbery, there is no evidence linking Bratten to the Shell robbery at issue in Count One. Therefore, the Court

will grant the Motion as to all Counts. Having granted the Motion in its entirety, the Court declines to address Bratten's remaining arguments.

## CONCLUSION

For the foregoing reasons, the Motion for Judgment of Acquittal, ECF No. 147, is GRANTED. A separate Order shall issue.

Date: June 25, 2018

THEODORE D. CHUANG
United States District Judge